UNITED STATES DISTRICT COURT
DISTRICT OF COLOMBIA
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | **MEMORANDUM IN AID** |
| | : | **OF SENTENCING** |
| | : | |
| -against- | : | |
| | : | |
| | : | |
| ERIC GERWATOWSKI | : | |
| | : | Case No. 1:22CR00125-001 |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# DEFENDANT ERIC GERWATOWSKI'S
# MEMORANDUM IN AID OF SENTENCING

On January 5, 2021, Eric Gerwatowski (herein "Mr. Gerwatowski") was a fun-loving, 30-year-old musician from Long Island, New York with no criminal record. His mother and father were deceased. Other than his younger brother, he had no family, but he had a high school degree, a girlfriend, and a passion for music and art. Like everyone else in the United States, he found himself living in a new world. One of fear, political and cultural divisiveness, and stress. The pandemic was going to kill everyone. Then it wasn't. The President was going to be indicted, then he wasn't. The country was going to be shut down. But liquor stores remained open. George Floyd was brutally and brazenly murdered by police in broad daylight. After months of sheltering in place, people took to the streets to condemn police brutality. There were peaceful protests. There were riots. Businesses, churches, gyms, and treatment centers remained closed. Graffiti and garbage and homelessness were on full display in the streets. Unemployment rose. People continued to die from Covid. Others argued *with* Covid. The mentally ill presented active symptoms. Suicides were up. Depression was up. Anger was up. The world was on edge.

And everyone handled it differently. Some with grace, others with a bottle of Cabernet, and some, by abusing other mind-altering substances like twitter and online forums. Many became consumed, on whatever side, with misinformation, censorship, the first amendment, voting laws, and conspiracies—from Jeffrey Epstein's death and imminent digital passports to a "Stolen Election." Mr. Gerwatowski was among the latter group, and although he had never attended a Trump rally or actively participated in divisive politics, his weak coping skills and poor judgment with respect to the great social disruptions of 2020 culminated in his participation in the "Save America Rally" at the National Mall in Washington D.C. and "approximately three minutes" inside the US Capitol Building on January 6, 2021.

Mr. Gerwatowski was arrested over a year later on February 8, 2022 and formally charged on April 13, 2022 when a grand jury returned a five-count Indictment for Civil Disorder, in violation of 18 USC 231(a)(3), and other related charges. While some of the 900+ criminal participants long-planned to disrupt the voting certification process at the Capitol, brought weapons, and used violence, others spontaneously participated in criminal conduct, breaching barriers, and/or destroying property and, intentionally or not, instilling fear and posing a threat to the safety of innocent government employees and a nation of eyes-on-screen. Mr. Gerwatowski is not alleged to have used violence or to have played a sophisticated or major role in the event. He breached a barrier—yanking open the Upper House Doors without permission—, encouraged a crowd to enter the premises by yelling "Let's Go!" and then trespassed the Capitol Building in which he remained for "approximately three minutes" before he left. Mr. Gerwatowski did not plan to breach the Capitol Building when he work up that morning. He did not possess any weapons, assault anyone, threaten any person with violence, commit criminal mischief, nor breach more sensitive areas within the building.

Mr. Gerwatowski's conduct since January 6, 2021, demonstrates remorse and positive, thoughtful transformation. He promptly accepted responsibility for his conduct, pled guilty to Civil Disorder pursuant to a plea agreement with the Government, fully allocuted to all the elements of the offense, has been 100 percent compliant with pretrial services, has adhered to all of the conditions of his release, and has not been rearrested. Before January 6, 2021, Mr. Gerwatowski was single, directionless, and consumed with politics and heavy metal music. After January 6, 2021, he became a husband to Serena Gerwatowski, a father to his newborn son, Asher, and a convert and member of Congregation Beth Sholom Chabad in Mineola, New York. Remarkably, Mr. Gerwatowski's demonstrated maturity and dependability—he is a full-time caretaker for his son when his wife is rendered disabled from a lifelong medical condition—has won over the heart of his mother-in-law who was once utterly repulsed by his conduct on January 6th. Mr. Gerwatowski once wrote a song called, "I Am Not Who I Used to Be." We submit to this Court that one's past indiscretion may be a ring in a tree one cannot simply sand away, but Mr. Gerwatowski is not who he "used to be."  We ask the Court to consider the new tree rings he has accrued in the form of positive, life-altering steps he took before he even knew he would be arrested. We also ask the Court to consider the strong mitigation in his past when contemplating an appropriate sentence.

The parties agree that Mr. Gerwatowski's total offense level of 8 and his lack of criminal history place him at a guideline imprisonment range of zero months to six months. For the reasons outlined herein, we respectfully submit that a sentence of 12 months' probation with community service and a $2,000 fine is sufficient, but not greater than necessary, to reflect the considerations of 18 USC 3553(a). A non incarceratory sentence would be consistent with the sentences of similarly situated defendants.

## BACKGROUND

Mr. Gerwatowski is a 32-year-old husband and father and life-long resident of Long Island, New York. Prior to the instant criminal conduct, Mr. Gerwatowski, then 30, had no criminal record, and created and produced music, toured with his band at events, and contributed to charitable causes. Mr. Gerwatowski had never been involved in politics nor passionate about them prior to the Trump presidency (he previously identified as a moderate democrat). Rather, he emerged himself in friendships, in his community, and in music, and consistently worked humble jobs until he was able to build a career in production. Mr. Gerwatowski had not involved himself in any Trump protests or rallies prior to January 6, 2021, but over the course of the preceding years, he became a Trump supporter and engrossed in the political wars and theatrics of his presidency. On January 5, 2021, Mr. Gerwatowski traveled to Washington D.C. with the intent to participate in the "Save America Rally" and demonstrate his support of the former President with like-minded individuals. At the suggestion of President Trump, he—along with hundreds—began to make their way towards the Capitol Building to protest the election results and impact the certification process. By the time he arrived at the Capitol Building doors, protesters had already breached security and unlawfully entered the premises. Mr. Gerwatowski understood that a young person had been shot inside of the Capitol Building. Despite efforts by law enforcement to keep the Upper House Doors closed and to keep protesters from entering the premises, Mr. Gerwatowski yanked open the door, encouraged protesters to enter and himself walked inside the corridor and left approximately three minutes later.

## DISCUSSION

I. **The Requested Sentence Comports with the Factors Described in Title 18, United States Code, Section 3553(a).**

### A. Legal Standard

Under 18 U.S.C. Section 3553(a), the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The statute then provides that in determining the sentence to be imposed, the Court shall consider the following:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed to
    a. reflect the seriousness of the offense, promote respect for the law, and provide for just punishment,
    b. afford adequate deterrence to criminal conduct,
    c. protect the public from further crimes of the defendant, and
    d. provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The kinds of sentences and the sentencing range established [in the Sentencing Guidelines];

(5) Any pertinent policy statement [issued by the Sentencing Commission];

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

*See* 18 U.S.C. Section 3553(a).

### B. The nature and circumstances of the offense

Mr. Gerwatowski breached security barriers, yanked open the Upper House Doors of the Capitol Building, while law enforcement actively tried to keep them closed and prevent crowds from entering, yelled "LET'S GO!" to others, and walked into the corridor area. He remained on premises for approximately three minutes and then left. Mitigating circumstances are present. Mr. Gerwatowski did not plan an insurrection. He did not long-conspire with others to obstruct a lawful process. He did not use nor promote violence, did not physically injure others, threaten to injure others, possess weapons or dangerous instruments, nor did he steal or break or destroy government property. Moreover, at the moment he breached security by unlawfully opening and entering the Upper House Doors, there had been reports that an individual was shot and killed inside the Capitol and he was in close proximity to the area in which the individual had been shot. Mr. Gerwatowski is seen and heard on video yelling "they're shooting kids." The inference is that Mr. Gerwatowski thought, however unwarranted, that a minor had been killed.

We are not asserting that Mr. Gerwatowski's conduct was equal to that of a mere tourist who was caught in the moment and caused no harm whatsoever. Even though Mr. Gerwatowski did not have the intent to harm others or to damage property, his presence added to the mass of rioters that, in the collective, obstructed law enforcement's ability to secure the premises as they were outnumbered and emboldened others to commit crimes.

However, as the government has recognized in similar cases, those who engaged in violent conduct are generally more dangerous and may deserve a sentence of imprisonment. Those who entered the premises without permission but committed aggravating acts like property damage and theft may also warrant some incarceration or lengthier supervision, while those, like Mr.

Gerwatowski, who trespassed but engaged in less serious aggravating factors do not necessarily warrant incarceration.

### C. History and characteristics of the defendant

Mr. Gerwatowski survived years of childhood abuse and neglect, raised himself and his younger brother during his teenage years, did not hold grudges against his parents but instead mended his relationships with them, cared for his mother while she was suffering from pancreatic cancer and multiple sclerosis and then suffered the loss of his father, mother, and grandmother—all within five years—when he was in his mid twenties. At 30, Mr. Gerwatowski worked hard in the music industry, ran his own business, and managed to give back to his community. But he was a little bit lost. And then the world changed and challenged not just the vulnerable, but even the strongest of minds. The Trump 'cause' gave his life the illusion of meaning he thought he was missing. He made a mistake that will be forever inscribed in his history. But Mr. Gerwatowski learned his lesson and transformed himself voluntarily—before the threat of incarceration became real following his arrest a year later. He married his girlfriend, became a father, became the sole breadwinner, and substituted diaper changes, household chores, and religious services for concerts. He converted to Judiasm and became a member of his local Congregation. And throughout his ups and downs, he maintained the love and respect of his community. Mr. Gerwatowski is a humble, good-hearted person who would not take the Court's mercy for granted and will continue to live responsibly.

Mr. Gerwatowski was born to Eric John Gerwatowski and Ann Gerwatowski Murphy in Long Island, New York, where he was raised and continues to reside. He has one younger brother, Michael (28). Mr. Gerwatowski's father was a customer supervisor at Northwest Airlines, a Church organist and bus driver. He was an alcoholic and had bipolar disorder. Mr. Gerwatowski's

mother was a stay-at home mom and had multiple sclerosis. Both his parents suffered from depression. Mr. Gerwatowski's father was physically abusive to his family. Mr. Gerwatowski both witnessed his father's violent assaults on his mother, frequently resulting in police interventions, and was himself physically abused by him throughout his childhood.

With this tumultuous home life in the background, Mr. Gerwatowski struggled academically. He began seeing counselors in middle school and was diagnosed with Attention Deficit Hyperacrtivity Disorder and Depression. He was prescribed medication but it made him "crazy," so he stopped taking it. *See* Probation Sentencing Report ("PSR"), P. 3.

Mr. Gerwatowski's parents divorced when he was 14 years old but they remained in the same home for a year before his father left. Shortly thereafter his mother remarried and moved out. However, Mr. Gerwatowski and his brother, then 16 and 12 respectively, continued to live in the family home by themselves, without parental supervision. *See* PSR, P.2. Although Mr. Gerwatowski and his brother had adequate clothing and shelter, they did not always have sufficient food. His mother would visit them once a week and they saw their father once a month. *See* Id.

Nonetheless and without typical familial support, Mr. Gerwatowski managed to graduate from Herricks High School in New Hyde Park, New York and later attended Nassau Community College though he never graduated.

When he was 23 years old, Mr. Gerwatowski's father died unexpectedly. Four years later, in 2017, his mother (who was already suffering from multiple sclerosis) was diagnosed with pancreatic cancer. When his mother broke the news of her cancer diagnosis to her own mother (Mr. Gerwatowski's grandmother), Mr. Gerwatowski's grandmother died of a sudden heart attack. For the next several months, Mr. Gerwatowski cared for his mother "through her suffering and pain. [Mr. Gerwatowski] lost his entire family, yet he managed to work through each monumental

issue, pick himself up, and continue his life and help his younger brother through as well." *See* Exhibit M, Letter of Regina Griffo. Thus, in his mid twenties, and right around the tumultuous Trump presidency, Mr. Gerwatowski found himself utterly alone, without parents, and without his grandmother. While his parents indeed neglected and abused him throughout his childhood and teens, Mr. Gerwatowski loved them tremendously and mended his relationships with them prior to their deaths. He reports being grateful for the positive bond he shared with his parents before they unexpectantly died. *See* PSR, P.2. His life-long friend observes, "Mr. Gerwatowski was an incredible son to both of his late parents and a loving sibling to his only brother." *See* Exhibit D, Letter of Rabbi Joshua Kent.

Mr. Gerwatowski demonstrated consistent work ethic and appreciation for employment from a young age. At 14, he was a stocker at Parkway Deli. At 15, he worked at a butcher shop cleaning machines. At 18, he was a cashier at Frantoni's Pizzeria. At 20, he was a stocker at P.C. Richard and Sons. Throughout the years he worked on all facets of music production, from writing and composing songs, to sound-engineering, and video production and designing album art. Since October of 2016, Mr. Gerwatowski has been self-employed in the field of multimedia engineering and music production. He is self-taught. Mr. Gerwatowski has always exhibited appreciation for all of his past and current employment. *See* PSR, P.2.

Mr. Gerwatowski channels his work ethic and talent to raise others in the music field. According to William Gordon, a work colleague, Mr. Gerwatowski is hardworking—he "was able to teach himself how to be a studio engineer and once he scraped enough money together he was able to build himself his own home studio. The arts often go overlooked in this age of instant gratification. Mr. Gerwatowski has a unique ability to get the very best out of the artists he works with. This is why he is a valued member of the Long Island music scene. He's helped countless

artists find their voice and take their passions to the next level." *See* Exhibit C, Letter of William M. Gordon. *See also* Exhibit D, Letter of Rabbi Joshua Kent ("He has grown a recording business helping local musical talents develop their passion and skills, which is really his passion as well – helping others.")

Mr. Gerwatowski does not abuse drugs or alcohol. He has not been diagnosed with a mental illness or personality disorder. Prior to the instant matter, he had no criminal contacts nor traffic infractions. He has no history of violence.

Mr. Gerwatowski has a reputation in the community, including professionals who have known him throughout his life, for kindness, volunteerism, generosity and humor. He is not known to be violent or dishonest. Mr. Gerwatowski is "a deeply passionate person, who holds his morals firmly. He stands up for himself, his beliefs, and the people around him, but never in a rash or violent manner." *See* Exhibit A, Letter of Thomas Bikales. *See* also Exhibits D, E ("I have never known Eric to be violent or have any ill will towards anyone"), F ("I personally have honestly never seen him to be hostile or even raise his voice"), G, H ("often profess[ed] that de-escalation is always the best choice over violence"), J ("Eric's sincerity in all areas of his life, are well recognized, and appreciated by all members [of the Congregation] and me. He has been very open, honest"), and L ("I do not know Eric to be a violent person…he has always been a loving and kind person at his core.")

Mr. Gerwatowski's criminal conduct surprised members of his community who have never known him to be an "extremist" or "overtly-political," and have witnessed him "de-escalat[e]" fights at concerts and treat people of all "race[s], religion, skin color, sexual orientation, [and] political persuasion[s]" with "utmost respect." *See* Exhibit H, Letter of Jack Morrow. His lifelong friend, Alex Voskerijian, attempting to reconcile the conduct from the person he knows

10

Mr. Gerwatowski to be writes, "I love my friend Eric and although terribly misguided, I believe he was trying to be a hero, not a villain. And so it is my hope that you'll show leniency in sentencing." *See* Exhibit L, Letter of Alex Voskerijian. The "Eric" people in Mr. Gerwatowski's community know is altruistic. Mr. Gerwatowski has "performed on stage and worked in production at many events free of charge to raise money for members of [his] community who have experienced sudden loss and medical debt," as well as for animal non-profit charities. *See* Exhibit K, Letter of William J. Smith. According to his Rabbi, Mr. Gerwatowski "is generous and always the first to volunteer his time and resources to the Congregation.") *See* Exhibit J, Letter of Rabbi Anchelle Perl. When a friend of his passed away, Mr. Gerwatowski hosted everyone after the funeral at his home and helped others in the grieving process. *See* Exhibit E, Letter of John Liantonio.

A true measure of one's character is how one conducts himself after his errors—especially when his misdeed remains unknown to the public. Mr. Gerwatowski did not get arrested for over a year after he entered the Capitol Building and committed civil disorder. But what he did after January 6, 2021, when no one was watching him or keeping score, speaks volumes of his character. He never attended another Trump rally. He did not actively participate in any schemes to overturn the election. He continued to work and earn money. He proposed to and married his girlfriend, Serena Gerwatowski, after they learned she was pregnant. And he has been a supportive and loving husband and father to their newborn, Asher. He has limited his outings to music venues and works from home to be present for his family. *See* Exhibit B, Letter of Serena Gerwatowski. His mother-in-law notes, "Eric [] has been an invaluable family member, caring for both my grandson and my daughter whom has a very significant medical history. Of late, my daughter has been bed-ridden, unable to cook, clean or carry the baby. As a husband and father, Eric has grown to handle multiple

simultaneous tasks including laundering cloth diapers, preparing kosher meals and tending to all of the needed household chores in order to allow my daughter to recuperate from her most recent bout of Ulcerative Colitis." *See* Exhibit I, Letter of Gaylene Pandolfo.  Ms. Pandolfo is especially grateful for Mr. Gerwatowski because "[a]s a full-time worker as Director of Quality Improvement for Behavioral Health, at Nassau University Medical Center, his care of my daughter has saved the entire family. Without his comprehensive care of both Serena and Asher, I would have to seek leave from my employment." *See* Id. *See also* Exhibit A, Letter of Thomas Bikales ("He cares deeply for his family and friends, something I've already seen demonstrated with his newborn son.")

Mr. Gerwatowski has lived an honest, humble life and committed good deeds for others. He has demonstrated he is capable of growth and committed to living a law abiding life. His history and characteristics support a non-incarceratory sentence.

### D. Seriousness of the offense, respect for the law, and providing just punishment

Mr. Gerwatowski understands the seriousness of his offense. His participation in the events wreaked havoc across the country. Although his conduct never caused physical injury or property damage, his actions had a ripple effect that caused harm to our nation. While his individual role may not have been the legal cause of tangible harms, his presence, perceived encouragement, and behavior was wrong and possibly emboldened others to act dangerously. Indeed, his conduct contributed to a threat to our democracy and the legal and necessary processes of an orderly and free society.

This crime stands in stark contrast to how Mr. Gerwatowski has lived.  He has dedicated his life to strengthening his community and earning a reputation for his integrity and charitable

acts, yet he committed a crime that threatens the general public. Mr. Gerwatowski's respect for the law and remorse for his conduct is evident in his actions. Mr. Gerwatowski accepted responsibility for his conduct by promptly pleading guilty, allocuting to the crime, adhering to all the conditions of his release, maintaining contact with his attorneys and pretrial services and by staying out of trouble. He has acknowledged his remorse to members of his community and those he loves the most. *See* Exhibit M, Letter of Regina Griffo ("Eric acknowledges and has deep regret for breaking the law. Eric takes responsibility for his actions,") Exhibit C, Letter of William M. Gordon ("I know how deeply he feels regret for the actions he took that day.")

His mother-in-law, Gaylene Pandolfo, who has a Masters Degree in the field of mental health and has been a civil servant for 30 years, writes, "Eric should not have been in Washington, D.C. on January 6. He should not have engaged in any civil disorder despite any misleading from the Commander in Chief. This day was a stain on our country and I am grateful for the ongoing court proceedings in order to ensure our democracy is fully effective in all three spheres. When Eric was arrested, his house was raided when my daughter was in her second trimester. I worried she would lose the baby. I was so angry with Eric. When I learned that while he was cuffed on the front lawn, all he could do was vomit; and repeatedly tell my daughter how sorry he was. When I learned of this, my heart opened to him as a mother-in-law, a social worker, and a citizen." *See* Exhibit I.

In conclusion, Mr. Gerwatowski demonstrated remorse, took responsibility for his conduct, promptly pled guilty, fully allocuted to his crime, did not obstruct justice in his own prosecution, and has remained out of trouble. He has also taken steps to becoming a responsible adult. He is an ever-present, reliable, and loyal husband, father, brother, and son-in-law.

### E. Adequate deterrence

The requested sentence—12 months probation or supervision with a period of community service and a $2,000 fine—would provide adequate deterrence to future individuals in Mr. Gerwatowski's position. Anyone tempted to disrupt or interfere with governmental administration or the law would be wise to use not just Mr. Gerwatowski's story—but those which have received far more media attention—as a cautionary tale.

Meanwhile, the requested sentence will contribute to a virtuous cycle in the field of law enforcement. By granting Mr. Gerwatowski a non-incarceratory sentence within the Guidelines range, the Court will encourage wrongdoers like him to cooperate as he has and reward good behavior, encouraging those who have made mistakes to become better citizens. And the requested sentence would encourage similarly situated defendants to accept responsibility for their conduct and their lives—saving resources for the government and reducing the incidence of crime.

By now, the public is well aware of the difference between peaceful, even impassioned, protest and a riot. The public should understand the difference between peaceful civil disobedience and violent acts that threaten our democracy and harm the general wellbeing of our nation. It should know this because the media has followed the sentences of Capitol rioters with a spotlight and a megaphone and the message is as follows: Those who committed acts of violence, armed themselves with weapons, threatened others, and/or damaged or stole property received prison time, public shaming, and in some instances became isolated from their families and communities. Those who did not engage in aggravating conduct, demonstrated remorse, and promptly took responsibility for their crimes had a greater likelihood of receiving a probationary sentence. Mr. Gerwatowski's case tells society that there is consistency and due consideration in sentencing.

That our Courts are just, fair, consistent, and merciful, but they also have the power to punish where appropriate.

### F. Protection of the public

The behavior that led to the present criminal charges is indefensible, but Mr. Gerwatowski's community would not be served by him spending any period of incarceration. After all, fellow members of his community are aware of Mr. Gerwatowski's crime, but have still come forward on his behalf to explain his value, rather than threat, to his community. The individuals that wrote on Mr. Gerwatowski's behalf are established professionals in the community that have taken a risk by publicly supporting a January 6th rioter. They are Rabbis, a licensed social worker, a laboratory technician in the pharmaceutical industry, individuals that work with people with disabilities, teachers, a property manager, and artists. They have forgiven Mr. Gerwatowski and described his value—from his charitable deeds, his contributions to his Congregation, and his talent in building the confidence of and launching the careers of new artists, to his uplifting sense of humor and his devotion to his wife and son. Mr. Gerwatowski is the breadwinner in his new family—his wife, Serena, who, prior to the pandemic did art therapy for the elderly, is a stay-at-home mother with a medical disability that intermittently renders her bedridden. *See* Exhibit B, Letter of Serena Gerwatowski. He is a full-time caregiver to his son along with his wife. He is needed and valued at home. An incarceratory sentence within the Guideline range would not protect the public. Mr. Gerwatowski never had a role in orchestrating what occurred on January 6, is non-violent, and is a major contributor in his household and community.

## II.     The Guidelines Authorize a Non Incarceratory Sentence, Which Would Be Consistent With the Sentences of Similarly Situated Defendants.

Upon information and belief, the government and the defense agree that Mr. Gerwatowski's total offense level under the Guidelines is 10, and that the government is pursuing a welcome further 2-level reduction from that amount. This leaves a Guidelines figure of 8, which corresponds to a range of zero to six months. As this Court is aware, however, since *United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines have been advisory rather than mandatory.

Here, the requested sentence of 12 months' probation, which is within the Guidelines range, would be appropriate as a matter of consistency. William Blauser (1:21-CR-00386-TNM) received a sentence of a $500 fine. According to the government, he pushed his way through the East Rotunda door and was captured on CCTV having some physical contact with law-enforcement as they were trying to get people to exit the Capitol Building. Blauser did not personally engage in an act of violence against an individual or destroy any property, and accepted responsibility after charges were brought against him. He was also pictured on the east-side balcony of the Capitol Building. *See* Governments Sentencing Memorandum by AUSA James D. Peterson, P.1-2. He certainly remained on the premises for a longer period of time than Mr. Gerwatowski, who had no physical contact with law enforcement agents.

Robert Chapman (1:21-CR-00676-RC) received 3 months' home detention 18 months' probation and a fine and community service. He allegedly ignored the barricades and police presence, claiming to have scaled a wall of the Capitol to gain access to the Capitol's entry, entered the Capitol through the Upper West Terrace door of the Capitol Building, took pictures and filmed himself inside of the Capitol while entering Statuary Hall and the Rotunda, reentered the Capitol after exiting and encouraged another rioter to enter the Capitol by telling her that "you just have

16

to shove your way in there," has a criminal history with multiple convictions, boasted about his unauthorized entry on his Facebook page and the dating app, Bumble, and apparently expressed no remorse for his conduct. *See* Government's Sentencing Memorandum by AUSA Brittany L. Reed, P.2.

Paula Ann Conlon (1:22-CR-00171 – JMC) received 12 months' probation $500 restitution despite the government's recommendation of 60 days incarceration and 36 months probation. According to the government, she entered the Capitol Building through a shattered window by the Senate Wing Door, walked inside of a sensitive area of the building, and took photos and/or video throughout the building and Capitol grounds. After she left the Capitol Building, she remained on Capitol grounds for over an hour observing confrontations between rioters and officers. In connection with her arrest in this case, she allegedly attempted to hide an AR-15-style firearm and ammunition from the FBI by depositing them in bushes located near three schools, which sent those schools into lock down status. She has a minor criminal history. *See* Government's Sentencing Memorandum by AUSA Nathaniel K. Whitesel, P.2.

And this Court recently sentenced Caleb Jones (1:21-CR-00321-JEB) to 2 months' home detention and 24 months' probation. According to the government, he ignored the barricades and police presence and scaled the wall of the U.S. Capitol to gain entry to an unauthorized point of entry. Instead of leaving the Capitol while rioters were damaging the Capitol, Mr. Jones took pictures of the rioting and sent text messages and photographs to friends. He entered the Capitol Building through the Senate Wing and continued to take pictures and film inside of the building. He remained inside of the Capitol for approximately fifteen minutes, leaving the building only after being subjected to tear gas administered by law enforcement officers who were attempting to

evict the defendant and other rioters from the Capitol. *See* Government's Sentencing Memorandum by AUSA Brittany L. Reed, P. 1-2.

Since January 19, 2023, at least 57 individuals involved in the Capitol riots have received non-incarceratory sentences and at least 51 have received a sentence of home detention. Mr. Gewatowski's conduct is similar and contains less aggravators than many of these defendants referenced above. His unlawful entry was brief, only lasting minutes, and he left shortly thereafter. He did not make physical contact with law enforcement agents. He does not have a criminal record. He did not boast about his entry in the Capitol Building on social media or to others. He did not scale walls and go through windows. He did not enter sensitive areas within the building.

Mr. Gerwatowski respectfully requests that the Court consider the lack of planning or major role he had in the riot, the lack of property damage and violence in his individual case, the relatively small window of time he unlawfully entered the Capitol Building (three minutes), his voluntary decision to leave the premises, that he abandoned the "cause" after January 6 and before he was arrested, that he became a husband, father, and active member of his Congregation, his prompt plea and allocution, his unlikelihood to reoffend, and the devastation that the requested sentence will have upon the life of him and his family. This is all indicative of his respect for the law, his unlikelihood of reoffending, and his profound remorse.

## **CONCLUSION**

For the foregoing reasons, Mr. Gerwatowski respectfully requests a sentence of 12 months' probation, with a period of community service and a $2,000 fine.

Dated:  February 21, 2023
       Garden City, New York

                              Respectfully,

                              ____/s/Aida F. Leisenring, Esq._____
                              Aida Leisenring, Esq.
                              Bruce Barket, Esq.
                              BARKET EPSTEIN KEARON ALDEA & LOTURCO LLP
                              666 Old Country Road, Suite 700
                              Garden City, New York 11530